**Marquis & Aurbach**
CRAIG R. ANDERSON, ESQ.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CORNELIUS WESLEY,<br><br>        Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; DOES 1 through 10, inclusive; DOES 11-20, inclusive, and BILL YOUNG,<br><br>        Defendants. | Case No:    2:06-CV-00219-RLH-GWF |

**DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND BILL YOUNG'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

Defendants, Las Vegas Metropolitan Police Department ("LVMPD"), and Bill Young, by and through their counsel of record, Marquis & Aurbach, move this Court for Summary Judgment on all claims pursuant to Federal Rule of Civil Procedure 56. This Motion is made and based upon all papers, pleadings and records on file herein, the attached Points & Authorities and such oral argument, testimony and evidence that this Court may entertain.

MARQUIS & AURBACH

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for Defendants

///

///

///

M&A:05166-190 416353_1 1/2/2007 4:20 PM

## MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

### A. NATURE OF THE CASE

Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a municipality located in Clark County, Nevada. Defendant Bill Young, the Sheriff of LVMPD, is being sued in his official capacity. Plaintiff has not named any individual LVMPD officers in this lawsuit. Plaintiff filed his Complaint on February 13, 2006, in the Eighth Judicial District Court of Nevada. On February 22, 2006, Defendants removed the case to federal court based upon Plaintiff's 42 U.S.C. §1983 claims. The parties have completed discovery.

Plaintiff's Complaint alleges that on December 20, 2005, his Fourth and Fourteenth Amendment constitutional rights were violated when LVMPD officers arrested Plaintiff pursuant to a facially valid fugitive warrant out of Arizona. Although the warrant sought Plaintiff's brother, Delbert Natoni, the warrant listed Plaintiff's name, social security number, and date of birth as aliases used by Natoni. The arresting officers used their discretion to conclude that probable cause (i.e., "a fair probability") existed to detain Plaintiff. Three days later, on December 23, 2005, Plaintiff voluntarily executed an "Order of Extradition" in front of Justice Court Judge William Jansen in Las Vegas Justice Court Case No. 05F23432X. In the Order of Extradition, Plaintiff indicated that he "freely and voluntarily" agreed he was "the identical person against whom charges or criminal proceedings charging me with commission of a crime, have been instituted in the State of Arizona . . ." Upon extradition, Arizona officials determined that Plaintiff was not Natoni and released Plaintiff. Plaintiff is now alleging that LVMPD and Sheriff Young's arrest and detention violated Plaintiff's constitutional rights.

Plaintiff's Complaint alleges that Defendants "deprived the Plaintiff of his civil rights and constitutional rights pursuant to 42 U.S.C. §1983 and that he was deprived of his liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution; and the right to equal protection of the laws as guaranteed by the Fourteenth Amendment[s] to the United States Constitution." Specifically, Plaintiff claims that LVMPD "did not make any meaningful attempt to determine by reasonable means that the Plaintiff was

M&A:05166-190 416353_1 1/2/2007 4:20 PM

1  not the person who was wanted by the State of Arizona on warrants and that he was not his half
2  brother." In short, Plaintiff is alleging that Defendants falsely arrested him and conducted a
3  negligent investigation by not immediately exonerating Plaintiff.

4  As set forth below, Plaintiff fails to state a federal cause of action against LVMPD.
5  Furthermore, even if Plaintiff has stated a constitutional violation, his claims still fail as he
6  cannot connect the violation to an LVMPD policy, custom, or practice.

7  Finally, Plaintiff also alleges Nevada state law torts of assault, battery, false arrest, false
8  imprisonment, intentional infliction of emotional distress, and negligent hiring and supervision
9  against Defendants. Defendants are immune from these allegations pursuant to NRS 41.032.
10 Plaintiff seeks compensatory damages as well as punitive damages against LVMPD. Defendants
11 now seek summary judgment on all federal law and state law claims made against them by
12 Plaintiff.

13 **B.    STATEMENT OF UNDISPUTED FACTS PURSUANT TO LR 56-1**

14 **1.    Plaintiff's Arrest and Detention**

15 In December 2005, Plaintiff Cornelius Wesley was working as a journeyman plumber in
16 Las Vegas, Nevada. (See Deposition Transcript of Cornelius Wesley attached hereto as **Exhibit**
17 **A** at pgs. 9-10.) During this time an arrest warrant existed in the State of Arizona for Plaintiff's
18 brother, Delbert Natoni. According to the warrant, Natoni used the alias of Cornelius Wesley,
19 and the warrant included Wesley's correct date of birth and social security numbers as potential
20 identifying characteristics. (See **Exhibit B**, copy of warrant information taken from police
21 computer on December 20, 2005, at 8:52 p.m. Authenticated by LVMPD Det. Richard DePaulis
22 in **Exhibit C** at pgs. 37 and 64.) According to Mr. Wesley, prior to December 2005 he had been
23 arrested twice in Arizona based upon this same warrant for Natoni. (See **Exhibit A** at pg. 20.)

24 On December 20, 2005, Plaintiff got off work and met his cousin at the Boulder Station
25 Casino. Despite the fact that his cousin had been drinking alcohol, the cousin insisted on driving
26 the vehicle. (**Exhibit A** at pgs. 24-25.) In addition to Plaintiff and the cousin, two other relatives
27 were in the vehicle. According to Plaintiff, his cousin "started hot rodding," lost control of the
28 vehicle and ran into a brick wall. (Id. at pg. 25) Because the cousin had warrants out of Arizona,

M&A:05166-190 416353_1 1/2/2007 4:20 PM

he fled the scene of the accident. (Id. at pgs. 25-26) Plaintiff waited with the vehicle for law enforcement to arrive. When the police arrived, Plaintiff informed them that his cousin was driving the vehicle and had run off the road. The police officers eventually located the cousin passed out in a nearby alley. (Id. at pg. 27)

At the scene, Plaintiff presented his Arizona driver's license to the police officers. (Id. at pg. 29) Plaintiff informed the officer that "my brother is using my name and that is going to show up and he is wanted for a parole violation." The officer ran the information in his police cruiser's computer system and conformed the warrant existing in Arizona. (Id. at pg. 29; see also **Exhibit B**.) At 8:56 p.m. an LVMPD officer teletyped to Arizona that "officers standing by in the field with the above subject . . . Note that the name given to our officers is one of his AKA's/Wesley, Cornellius." Four minutes later Arizona teletyped back to the in-field officers, "Active warrant/please hold/no bond/DOC will extradite/" (See Teletype Printouts from December 20, 2005, attached hereto as **Exhibit D**.) The police officer told Plaintiff that Arizona wanted to extradite him. Plaintiff said "Fine, no problem." (**Exhibit A** at pg. 30) At the jail, Plaintiff was processed and placed in a cell.

According to Plaintiff, during the next several days he made numerous attempts to inform the jail staff that he was not the person sought in the warrant. On December 23, 2005, Plaintiff appeared in front of Justice of the Peace William Jansen at his 72-hour hearing. Plaintiff executed a "Written Waiver of Extradition" stating that he "freely and voluntarily state[s] that I am the identical person against whom charge or criminal proceedings charging me with commission of a crime, have been instituted in the State of Arizona, have been fully informed of my right to service an issuance of a warrant of extradition and to obtain a writ of habeas corpus as provided for in Nev. Rev. Stat. 179.197." (See **Exhibit E**, Written Waiver of Extradition verified by Cornelius Wesley in **Exhibit A** at pgs. 48-49.) Ironically, on that same date, Plaintiff executed an Inmate Request/Grievance form with LVMPD asking about the status of his fingerprints from Arizona that he claimed would vindicate him. (See **Exhibit F**, Inmate Request/Grievance Form. Authenticated by Cornelius Wesley in **Exhibit A** at pgs. 40-42.)

///

M&A:05166-190 416353_1 1/2/2007 4:20 PM

LVMPD never obtained Plaintiff's fingerprints and on January 2, 2006, Plaintiff was picked up by Arizona authorities and extradited to Arizona. (See **Exhibit A** at pgs. 58-61.) He remained in Arizona one additional night and was released. (See id.)

### 2.    LVMPD'S Policies and Procedures

Richard DePaulis is the LVMPD detective who handled Plaintiff's extradition. Det. DePaulis is a 12-year LVMPD veteran, assigned to the fugitive detail, career criminal section, robbery-homicide division. (See **Exhibit C** at pg. 7.) In December 2005, Det. DePaulis "was assigned to [a team] to actually facilitate the prisoners sent back to the wanting agencies. . ." (See id. at pg. 19.)

According to Det. DePaulis, when an arrestee claims he is not the person sought by law enforcement, the arrestee has two options. First, the arrestee can inform the judge at the initial 72-hour hearing in open court that he is the wrong person. (See id. at pg. 10.) Det. DePaulis testified that it is not uncommon to receive phone calls from judges during waiver of extradition hearings where the arrestee is claiming innocence. The second option an inmate may use is to claim his innocence through the inmate grievance system. Det. DePaulis acknowledges that Plaintiff executed a grievance, but it did not come to Det. DePaulis' attention until after Plaintiff's extradition. (See id. at pgs. 10-12.) Besides Plaintiff, Det. DePaulis is not aware of any other arrestee being extradited who was not the individual sought in the warrant. (See id. at pg. 65.)

## II.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As to this rule, the Supreme Court has stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make his showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-190 416353_1 1/2/2007 4:20 PM

1   See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

2   The moving party has the initial burden of showing the absence of a genuine issue of material fact. See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982). An issue is only "genuine" if the evidence is such that a reasonable jury, applying the applicable quantum of proof, could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether a fact is "material depends on the substantive law and whether the fact affects the outcome of the lawsuit," Id.

### B.   PLAINTIFF'S CLAIMS AGAINST SHERIFF BILL YOUNG

At the time of the incident, Bill Young was the Sheriff of Las Vegas Metropolitan Police Department. There is no allegation and no evidence that Sheriff Young was present at the scene of the incident or had any individual involvement. As such, Sheriff Young is entitled to summary judgment.

It is undisputed that "[l]iability under Section 1983 arises only upon a showing of personal participation by the Defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); see also May v. Enomoto, 633 F. 2d 164, 167 (9th Cir. 1980); Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978). Further, there is no *respondeat superior* liability under §1983. Monell, 633 F.2d at 167. Indeed, a supervisor can only be liable for violations caused by subordinates if the "supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.

In Taylor, a Nevada state prisoner filed a §1983 claim against prison officials, alleging various constitutional violations. Specifically, plaintiff named the attorney general for the State of Nevada and the director of the Nevada State Prison as defendants. Id. at 1043-1045. Upon review of the District Court's grant of summary judgment against the plaintiff for his §1983 claims, the Ninth Circuit upheld the District Court's dismissal of the attorney general and director. Id. at 1045. Because the attorney general and director were not "directly responsible" for the alleged deprivation or conduct, liability under §1983 could not attach. Id. Here, Sheriff Young did not personally participate in the alleged constitutional violations. First, there is no

Page 6 of 18

evidence that Sheriff Young was the arresting officer or working at CCDC on December 20, 2005, through January 3, 2006 - - the date Plaintiff claims to have suffered his constitutional violation. Thus, Sheriff Young was not even in the building when the alleged violation occurred and, therefore, cannot be liable for any constitutional violations.

### C. FEDERAL §1983 CLAIMS AGAINST LVMPD

#### 1. Municipality Legal Standards

Plaintiff is suing LVMPD -- a municipality. Plaintiff has never named any officers in their individual capacities in this case. During discovery, Plaintiff never moved to amend his Complaint to name any individual officers. As such, no individual officers have been named in this lawsuit and federal municipal liability standards apply. Plaintiff claims that LVMPD deprived him "of his civil rights and constitutional rights pursuant to 42 U.S.C. §1983 in that he was deprived of his liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and the right to equal protection of laws guaranteed by the Fourteenth Amendment of the United States Constitution." (See Compl. ¶12.) Specifically, Plaintiff is claiming that LVMPD "did not make any meaningful attempt to determine by reasonable means that Plaintiff was not the person who was wanted by the State of Arizona on warrants and he was not his half brother." (See id. at ¶8.) Thus, Plaintiff is alleging that LVMPD falsely arrested Plaintiff and conducted a negligent investigation into his claims that he was not the correct person.

Federal official capacity (or municipal) claims require that the deprivation of a constitutional right come directly from a plan or policy of the municipality. See Monell v. Dept. of Social Services, 463 U.S. 658, 690-91 (1978). It will only yield liability when the "execution of the government's policy or custom . . . inflicts the injury." Id. at 694. According to clear federal law, Plaintiff's "Monell" claim against LVMPD must satisfy a total of four conditions: (1) that Plaintiff possessed a federal right which an officer, acting under color of state law, violated; (2) that LVMPD had a policy; (3) that this policy "amounts to deliberate indifference" to Plaintiff's constitutional rights; and (4) that the policy was the "moving force" behind the

///

1  violation. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied,
2  519 U.S. 1111 (1997). Here, Plaintiff cannot establish any of the required elements.

### 2. **Plaintiff's Fourth Amendment False Arrest Claim Fails**

Plaintiff alleges that his Fourth Amendment rights were violated. Although not specifically pled, it appears that Plaintiff is alleging that the arresting LVMPD officers violated Plaintiff's Fourth Amendment rights by arresting him when the warrant actually sought his half-brother, Natoni. In Plaintiff's answers to interrogatories, he states that his arrest was unlawful because he "consistently and emphatically. . . told the officer that the person he was accusing me of being was my half-brother" and because his Arizona driver's license clearly identified him as Cornelius Wesley "and not Delbert J. Natoni." (See **Exhibit E**, at pg. 4.) Plaintiff does not allege, nor is there any evidence, that the warrant at issue is not facially valid. Thus, Plaintiff's Fourth Amendment claim is simply alleging that his constitutional rights were violated because he was not the individual sought in the valid warrant.

An action for false arrest and/or detention (false imprisonment) may be brought under §1983 for violation of the Fourth and Fourteenth Amendments. See, e.g., Monroe v. Pape, 35 U.S. 167 (1961). Where the disputed arrest is made pursuant to a warrant, establishing liability against a police officer is difficult. In Hill v. California, 401 U.S. 797 (1971), the Supreme Court determined, in a criminal case, whether the mistaken arrest of one person (for whom no probable cause to arrest existed), based upon the misidentification of that person as a second person (for whom probable cause to arrest existed), violated the constitution. The Court concluded, "No," writing that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." Id. at 802. The same "reasonable mistake" standard applies (1) in the context of a §1983 action and (2) when the police have a valid warrant (as opposed to just plain probable cause) to arrest someone, but mistakenly arrest someone else due to misidentification. See Bingham v. City of Manhattan Beach, 341 F.3d 939 (9th Cir. 2003).

In Bingham, an African-American arrestee brought a §1983 action against the city and the arresting officer, challenging a traffic stop that preceded an arrest and the arrest itself on

M&A:05166-190 416353_1 1/2/2007 4:20 PM

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

probable cause and equal protection grounds. The plaintiff, Howard Bingham, was pulled over for a traffic violation. During the stop, the arresting officer found a warrant issued for an "Andre Bingham" who, according to the warrant, had the same address as Howard. Despite the same address, the warrant's identifying descriptions for Andre, such as height, weight, and date of birth, all differed from Howard.

Despite the fact that the only identical information on the warrant was the last name and address, the Ninth Circuit held that "detaining [Howard] to verify a warrant whose identifying information matched him so closely is not an objectively unreasonable decision." Id. at 952. See also, Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002); cert. denied, 538 U.S. 906, 123 S. Ct. 1482 (2003) (held that a mistaken arrest was reasonable and did not violate the constitution for purposes of §1983 claim where the plaintiff shared the same age, name, sex, and race as the fugitive wanted, had a similar social security number, and was born in the same state; Blackwell v. Barton, 34 F.3d 298, 303-304 (5th Cir. 1994) (holding that an officer reasonably arrested the §1983 plaintiff, who only had the same first name and physical characteristics as those listed on the warrant).

In Brown v. Patterson, 823 F.2d 167 (7th Cir. 1987), the Seventh Circuit found no cause of action where the person arrested was the wrong person but had the same name as an alias used by the suspect named in the warrant. The same circuit, in Patton v. Trzybylski, 822 F.2d 697 (7th Cir. 1987), also found no cause of action where the person arrested was the wrong person but had the same name as the suspect named in the warrant. Federal courts have held that an erroneous arrest based upon a facially valid warrant only violates the Fourth Amendment in the most extreme circumstances. See, e.g., United States v. Doe, 703 F.2d 745, 747 (3d Cir. 1983) (where the warrant was for the arrest of "Ed" (no last name given)). In fact, in the granddaddy case involving erroneous warrant arrests, West v. Cabell, 153 U.S. 78, 85-86 (1984), the Supreme Court merely held that a warrant to be validly executed must only specifically name or identify the person to be arrested.

Here, Plaintiff admits that fugitive Delbert Natoni was using Plaintiff's name as an alias. In addition, the warrant information provided to the LVMPD officers included Plaintiff's actual

M&A:05166-190 416353_1 1/2/2007 4:20 PM

social security number and date of birth. (See **Exhibit B** and **Exhibit A** at pg. 7.) Thus, the decision to arrest Plaintiff based upon the warrant whose identifying information matched the Plaintiff so closely is clearly constitutional. As such, Plaintiff's Fourth Amendment claim for illegal seizure fails. In fact, the arresting officers had little choice but to arrest and detain Plaintiff. According to Det. DePaulis, it is common for an arrestee to deny he is the individual sought. In fact, it is "uncommon for a suspect to admit that he is the person being sought." (See **Exhibit C** at pg. 64.)

In addition to proving a constitutional violation, Plaintiff also has clearly failed to meet the second prong of his Monell burden. Even if Plaintiff's arrest were unconstitutional, he has failed to produce any evidence that LVMPD has a custom or practice of unconstitutionally arresting individuals on warrants for other individuals. Thus, Plaintiff's claim fails for this reason as well. Plaintiff has not cited one other incident where an individual was unconstitutionally arrested pursuant to a facially valid warrant.

On a final note, an analogous case to this situation is Lopez v. City of Oxnard, 207 Cal. App. 3d 1 (1989). In that case, a person arrested for drunk driving gave plaintiff Lopez's name, address, and date of birth as his own, and when the person failed to appear in court, a warrant was issued for plaintiff's arrest. After Lopez was arrested on this warrant, the court provided him with a "disposition sheet" to carry with him, stating he was not the person described in the warrant. Nevertheless, plaintiff was arrested *two more times* by officers who refused to investigate the validity of the disposition sheet. The state court held that because the warrant "accurately described" the plaintiff by name, the defendant officers had reasonable belief that the arrest was lawful. Id. at 8. The court reasoned that the arresting officers were required to "act swifly and make on-the-spot evaluations, often under chaotic conditions." Id. at 7. Moreover, the court held that the personnel at the jail, although not in the same situations as street officers, were also justified in ignoring plaintiff's claims of innocence and the disposition sheet. The court ruled that a warrant apparently valid on its face did not require an officer to investigate the validity of a "piece of paper" handed to him by an arrestee.

///

3. **Plaintiff's Fourteenth Amendment Failure to Investigate Claim Fails**

Plaintiff's Complaint alleges that LVMPD violated Plaintiff's Fourteenth Amendment due process rights by "not mak[ing] any meaningful attempt to determine by reasonable means that the Plaintiff was not the person who was wanted by the State of Arizona on warrants and that he was not his half-brother." (Compl. ¶8) In short, Plaintiff is alleging that LVMPD failed to adequately investigate Plaintiff's claim of innocence.

In Baker v. McCollan, 443 U.S. 137 (1979), the Supreme Court addressed this very issue. In that case, the plaintiff was arrested on a valid warrant intended for his brother. Despite repeated protests of innocence, the plaintiff spent eight days in jail. The plaintiff alleged that the sheriff was liable for not having established an effective identification system. The Court rejected the claim stressing that the arrest occurred pursuant to a facially valid warrant. While conceding that a longer period of detention of the "wrong" person might violate due process, the Court found that the eight-day period in Baker was not such as to implicate constitutional protections. The Court's analysis is quite simplistic: due process is satisfied by a facially valid warrant and detention under that warrant does not require a probable cause hearing or effective identification procedures. A plaintiff does not have a constitutional right to instruct police officers on how to conduct an investigation and a plaintiff does not have a constitutional right to have his claims of innocence investigated. The Court stated that "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." Id. at 145 (quoting Patterson v. New York, 432 U.S. 197, 208 (1977)). Further, the Court stated:

> [W]e do not think a sheriff executing an arrest warrant is required by the constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

Id. at 145-146.

///

M&A:05166-190 416353_1 1/2/2007 4:20 PM

The Ninth Circuit has held there is "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." <u>Gomez v. Whitney</u>, 757 F.2d 1005 (1985). There is no constitutional right for a citizen to instruct a police officer on how to conduct an investigation. Here, the Plaintiff's allegation that LVMPD had a duty to conduct an independent investigation confuses the police officer's function with that of the prosecutor or judge and has been implicitly rejected in <u>Lee v. Town of Estes Park</u>, 820 F.2d 1112, 1114-15 (10th Cir. 1987) (noting procedure whereby officer took custody of the suspect and determined charges based solely on interview with the accuser who made the citizens arrest.)

Thus, Plaintiff has failed to state a constitutional claim as his detention and arrest did not violate the constitution. Although unfortunate, Plaintiff's arrest was based upon a facially valid warrant. Thus, the arrest was legal. Second, LVMPD simply turned Plaintiff over to Arizona – the entity that issued the valid warrant. As such, LVMPD acted legally and properly in detaining and extraditing Plaintiff. Thus, Plaintiff cannot establish even the first prong necessary to establish municipal liability as no constitutional violation occurred.

Assuming arguendo that a violation did occur, Plaintiff's Fourteenth Amendment claims still fail has he cannot establish that his unconstitutional investigation/detention claims resulted from an LVMPD policy or procedure. *Respondeat superior* does not attach to municipalities; therefore, Plaintiff must also demonstrate that if a constitutional deprivation did occur it resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy. Plaintiff has not demonstrated a "direct causal link" to any municipal policy or custom as required by <u>Canton, City of v. Harris</u>, 489 U.S. 378, 385 (1989). The evidence in this case establishes that LVMPD had a policy in place for cases of mistaken identity. LVMPD provided two avenues for Plaintiff to protest his arrest – (1) the 72-hour open court hearing and (2) inmate grievance form. (<u>See</u> **Exhibit C** at pgs. 10-14.) Here, Plaintiff acknowledges that he voluntarily signed a waiver and in open court *agreed* to extradition. (<u>See</u> **Exhibits A and E**.)

///

M&A:05166-190 416353_1 1/2/2007 4:20 PM

With respect to the inmate grievance Plaintiff filed, LVMPD is unsure as to why it was not acted upon. It is unknown whether it was misplaced or whether Plaintiff's 72-hour hearing early that day negated the need for the fingerprints. What is known is that Plaintiff cannot produce any evidence that LVMPD habitually misfiles such requests or treats fingerprints in such a negligent manner so as to result in unconstitutional detentions. Nor is there any evidence that the LVMPD's actions in this case were intentional. See Erdman v. Cochise County, Arizona, 926 F.2d 877, 882 (9th Cir. 1991) (arrestee's twelve-day erroneous detention did not violate the constitution nor did plaintiffs prove a municipal policy or custom that the County habitually misfiled paperwork so as to result in dual arrests for the same crime, or that the combination of errors was intentional).

Finally, Plaintiff's incarceration, if unconstitutional (which it was not), was an isolated incident caused by at most simple negligence. This is insufficient to establish liability under 42 U.S.C. §1983. In City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the Supreme Court held that a single incident is not sufficient to establish liability against a municipal defendant. As the Supreme Court, stated in Canton v. Harris, "plainly, adequately trained officers occasionally make mistakes; the fact that they do so says little about . . . the legal basis for holding the city liable." 489 U.S. at 391. Plaintiff's deprivation, if any, was caused by the unfortunate and inadvertent lack of communication between CCDC officials and the LVMPD liaison responsible for checking fingerprints. There is no evidence that this mistake has ever been duplicated or occurred prior to Plaintiff's incarceration. Such mistakes do not amount to the "conscious choice" required to establish a municipal policy or custom under Monell, and liability does not attach under §1983 for erroneous imprisonment alone. As such, summary judgment is proper in this case.

**D.    DEFENDANTS ARE IMMUNE FROM ALL OF PLAINTIFF'S STATE LAW CLAIMS**

In addition to Plaintiff's federal allegations, Plaintiff also alleges several state law claims against LVMPD. In Plaintiff's second claim for relief, he alleges that the acts described in his Complaint constitute "assault, battery, false arrest, false imprisonment, infliction of emotional

M&A:05166-190 416353_1 1/2/2007 4:20 PM

distress, negligent hiring and supervision. . ." (Compl. ¶16)  Summary judgment for Defendants is appropriate on all of Plaintiff's state law claims.

    1.    **Plaintiff's False Arrest/Imprisonment, Assault, Battery and Infliction of Emotional Distress Claims Fail**

Plaintiff's false imprisonment and false arrest claims are barred pursuant to Nevada statute.  Under Nevada law, LVMPD is immune from Plaintiff's allegations.  NRS 41.032, in pertinent part, provides:

> [N]o action may be brought . . against an immune contractor or officer or employee of the state or any of its agencies or political subdivisions which is
>
> . . .
>
> 2.  Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, ***whether or not the discretion is abused***.

See NRS 41.032 (emphasis added)

In Ortega v. Reyna, 114 Nev. 44, 953 P.2d 18 (1998), the Supreme Court of Nevada unequivocally held that the decision to effectuate an arrest is a discretionary act and police officers are immune from any allegations resulting from a false/negligent arrest.  The clear language of NRS 41.032 and Ortega's interpretation establishes that Nevada state law provides absolute immunity to police officers in their discretionary decision of whether probable cause existed to arrest Plaintiff.  In addition, as set forth above, probable cause existed to arrest Plaintiff which forbids any of these claims.

The Ninth Circuit in Carey v. Nevada Gaming Control Board, 279 F.3d 873 (9th Cir. 2002), recently affirmed a finding of immunity for false imprisonment and battery causes of action.  The plaintiff alleged that the agent arrested him without probable cause and a battery occurred when the agent handcuffed and detained him against his will. Id. at 878.  The Ninth Circuit affirmed the decision of the district court dismissing the state law claims based upon NRS 41.032 because the arrest "was not a prescribed act; rather it was an act resulting from the exercise of his own discretion." Id.  Interestingly, the Ninth Circuit, based on the same facts,

M&A:05166-190 416353_1 1/2/2007 4:20 PM

found the arrest violative of the Fourth Amendment and also found there was no qualified immunity for the arrest. Id. at 881-82.

Assuming arguendo that Defendants are not immune, Plaintiff still cannot prevail on his false arrest and false imprisonment claim allegations. According to Nevada law, an arrest made pursuant to probable cause is privileged and not actionable. Nelson v. City of Las Vegas, 99 Nev. 548, 552, 665 P.2d 1141 (1983); Hernandez v. City of Reno, 97 Nev. 429, 634 P.2d 668 (1981). When probable cause exists to effectuate an arrest, all civil actions resulting from the arrest fail. See Ortega, 114 Nev. at 61. When the facts relating to the existence of probable cause are not in dispute, it becomes a question of law whether such facts constitute probable cause. Marshall v. City of Carson, 86 Nev. 107, 464 P.2d 494 (1970).

The Plaintiff's arrest in this case is based upon probable cause. The warrant at issue correctly identified the Plaintiff as an alias used by the individual sought. In addition, the warrant contained Plaintiff's social security number, date of birth, and race. This information is sufficient for a reasonable officer in the field to conclude that fair probability existed that the Plaintiff was the individual sought by the warrant.

### 2.   Negligent Hiring and Supervising Claim Fails

Defendants are also immune from Plaintiff's negligent hiring, training, and supervision claim of failure to adequately investigate, supervise, and train their police officers. According to the Nevada Supreme Court, in determining what constitutes a discretionary act triggering immunity, federal law is extremely persuasive. Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970). According to federal law, the hiring, training, and supervising of governmental employees is clearly a discretionary act for which the government entity is immune from liability. Nurse v. U.S., 226 F.3d 996 (9th Cir. 2000); also see Martin v. Malhoit, 300 F.2d 237 (D.C. Cir. (1987) (hiring and supervising constitute discretionary functions); Gordon v. Ottumwa Comm. Sch. Dist., 115 F. Supp. 2d 1077, 1088 (S.D. Iowa 2000); Hughes v. City of Hartford, 96 F. Supp. 2d 114, 119 (D. Conn. 2000); Jackson v. Katy In. Sch. Dist., 951 F. Supp. 1293, 1306 (S.D. Tex. 1996); Newsome v. Webster, 843 F. Supp. 1460, 1466 (S.D. Ga. 1994). Furthermore,

///

M&A:05166-190 416353_1 1/2/2007 4:20 PM

common sense dictates that LVMPD must use its discretion when determining who to hire and how to train them. Therefore, Plaintiff cannot prevail against LVMPD on this allegation.

However, even if LVMPD were not immune, Plaintiff has failed to provide any evidence supporting his allegation. Under Nevada law, the tort of negligent hiring imposes "a general duty on the employer to conduct a reasonable background check on a potential employee to ensure he is fit for the position." Burnett v. C.B.A. Security Service, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991). An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities. Kelley v. Baker Protective Services, Inc., 198 Ga. App. 378, 401 S.E.2d 585, 586 (1991). There is no evidence that LVMPD did not conduct reasonable background checks or that anything in the involved officers' backgrounds would have raised a concern. Thus, summary judgment is appropriate on this cause of action.

### III.   PUNITIVE DAMAGES

Plaintiff also alleges that he is entitled to punitive damages. Plaintiff cannot recover punitive damages for his federal allegations against LVMPD or any of his state law claims. With respect to Plaintiff's federal allegations, municipalities such as LVMPD are immune from punitive damage awards under §1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

With respect to Plaintiff's state law claims, federal courts must look to state law to resolve causes of actions brought in federal court. See Schulz v. Lamb, 504 F.2d 1005 (9th Cir. 1974). Thus, the Court must look to applicable Nevada state law in determining the availability of punitive damages on Plaintiff's state law claims set forth in Plaintiff's Complaint. NRS 41.035(1) provides:

> An award of damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the state or any applicable subdivision, immune contractor or state legislator arising out of an act or omission within the scope of his public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of the claimant. An award may not include any amount as exemplary or punitive damages.

M&A:05166-190 416353_1 1/2/2007 4:20 PM

1  See NRS 41.035(1).

2  The purpose of enacting NRS 41.035 was to waive sovereign immunity. State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985). NRS 41.035 places conditions on the waiver of immunity on the part of the state and its agencies and political subdivisions. It also limits the recovery which may be had against the state, its subdivisions or its officials. Specifically, the statute precludes any award of punitive damages.

Plaintiff's Complaint is clear that all actions are against LVMPD and its officers in their official capacities while acting under the color of state law. Thus, Plaintiff's own Complaint admits that LVMPD and its officers were acting within the course and scope of their offices and there can be no recovery of punitive damages for Plaintiff's state law claims. See Frank Briscoe Co. v. County of Clark, 643 F. Supp., 93 (D. Nev. 1986), aff'd 857 F.2d 606 (9th Cir. 1988).

## IV. CONCLUSION

Based upon the above, Defendants are entitled to summary judgment on all Plaintiff's claims. Plaintiff's federal claims fail for two reasons. First, Plaintiff has failed to establish a constitutional violation. Second, even if a constitutional violation did occur, Plaintiff has failed to show that the violation resulted from a policy or custom of LVMPD. As such, summary judgment is mandated against all federal claims. Plaintiff's state law claims also fail as they all involve discretionary functions for which LVMPD is immune.

Dated this 2 day of January, 2007.

MARQUIS & AURBACH

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for Defendants

MARQUIS & AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:05166-190 416353_1 1/2/2007 4:20 PM

## CERTIFICATE OF MAILING

I hereby certify that on the 2nd day of January, 2007, I served a copy of the foregoing **DEFENDANT LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND SHERIFF BILL YOUNG'S MOTION FOR SUMMARY JUDGMENT** upon each of the parties by depositing a copy of the same in a sealed envelope in the United States Mail, Las Vegas, Nevada, First-Class Postage fully prepaid, and addressed to:

Ron von Felden, Esq.
871 Coronado Center Drive, Suite 200
Henderson, NV 89052
Attorney for Plaintiff

and that there is a regular communication by mail between the place of mailing and the place(s) so addressed.

_/s/ Karen J. Stamper_
an employee of Marquis & Aurbach

M&A:05166-190 416353_1 1/2/2007 4:20 PM